**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| FISHER DEVELOPMENT | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | CPU4-19-003443 |
| | ) | |
| CHRISTOPHER J. TIGANI, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: February 8, 2021
Decided: April 9, 2021

Thomas Marconi, Esq.
1813 N. Franklin Street
Wilmington, DE 19802
*Attorney for Appellants*

Christopher Tigani
3399 Concord Pike
P.O. Box 7752
Wilmington, DE 19803
*Pro se Appellee*

## MEMORANDUM OPINION AND ORDER ON APPELLANTS' MOTION TO ENFORCE SETTLEMENTAGREEMENT AND APPELLEE'S MOTION TO COMPEL

On September 30, 2019, Appellants Fisher Development Corporation, Nina Fisher, and Michael Phouts (collectively as the "Fishers") brought this appeal from a decision of the Justice of the Peace Court in a replevin action brought by Appellee Christopher Tigani. Before the Court are the Fishers' Motion to Enforce Settlement Agreement, filed December 15, 2020, and Tigani's Motion to Compel, filed December 15, 2020.

A hearing on the Motions was held on February 9, 2021, at which the Court heard oral argument from both parties. In conjunction with the present Motions, the Court also heard oral argument on a Motion to Quash and for a Protective Order brought by non-parties NKS

Distributors, Inc. ("NKS") and A. Paul Ruggiero. At the conclusion of the hearing, the Court granted the Motion to Quash Subpoena and for Protective Order, and reserved decision as to the Fisher's Motion to Enforce Settlement Agreement and Tigani's Motion to Compel.[1]

For the reasons set forth below, this Court finds that an enforceable settlement agreement existed between the parties. Accordingly, the Fishers' Motion to Enforce Settlement Agreement is **GRANTED,** and Tigani's Motions to Compel is **DENIED as moot.**

## FACTS AND PROCEDURAL HISTORY

This appeal stems from a series of contentious landlord-tenant interactions which culminated in Tigani filing a replevin action in the Justice of the Peace Court to recover personal property left at a rental unit managed by the Fishers. Throughout the duration of this litigation, Tigani has also been involved in separate actions in the Court of Chancery involving NKS Distributors, Inc. ("NKS"), and its president, Paul Ruggiero, neither of whom are parties to the action before this Court.[2] Although the parties in this case are wholly distinct from those in the Chancery actions, Tigani has repeatedly endeavored to use this litigation as a tool for obtaining information he believes may be pertinent to the Chancery actions, focusing on alleged interactions between Ruggiero and Michael Phouts.

---

[1]    At the hearing, the Court indicated that Tigani's Motion to Compel would be denied to the extent it sought to recover information related to litigation pending in the Court of Chancery or otherwise not relevant to this litigation.

[2]    *Tigani v. Tigani*, 2017-0786 KSJM; *Tigani v. Tigani*, 2020- 0596 KSJM. The Fishers are not parties in the Chancery actions.

2

On the afternoon of December 4, 2020, Tigani initiated unsolicited settlement negotiations with counsel for the Fishers, Thomas Marconi, Esq., with the following e-mail (the "December 4th E-mail"):

*Thanks for your time yesterday. After the deposition, it is my belief that Mr. Phouts has more information than he is disclosing. I have a settlement offer for your clients subject to Delaware Rules of Evidence 408(a). Please present it to your clients and get back to me.*

*In addition to not filing any motions relating to the deposition seeking more time and sanctions, I will:*
  1. *Withdraw my Amended Complaint with prejudice.*
  2. *Pay your clients $33,000, which is the amount the Appellant's are seeking in their counter-claims.*
  3. *Pay all of the Appellant's legal fees from January 2019, up to $15,000*
  4. *Execute a broad confidentiality and non-disclosure agreement, prohibiting the reporting or pressing perjury charges.*
  5. *Stop investigating the July Theft.*
  6. *Commit to any other reasonable stipulations from Appellants.*

*In exchange:*
  1. *Appellants will provide all facts, communications, and evidence of any scheme or payments from NKS or anyone related to the NKS matter.*
  2. *Appellants execute a videotaped statement under oath in C.A. 2017-0786-KSJM, swearing to the facts above.*
  3. *The videotaped statement would be filed under seal.*

*Please let me know if your clients are interested in the offer.*

*Any communications between the parties, relating to this settlement offer, up to and including the execution of a confidential settlement agreement, shall be subject to D.R.E. 408(a).*

In subsequent communications, Tigani advised that his offer would remain open until 5:00 p.m. on December 7, 2020. On December 7, 2020, prior to the 5:00 p.m. deadline, Marconi responded to Tigani's offer via e-mail (the "December 7th E-mail"), stating:

*Dear Chris: The Appellants accept your settlement offer. Please put together a first draft of the settlement documents and it/them to me for review asap. I will prepare the stipulation of dismissal of the lawsuit and get that to you once we agree on the other settlement document(s).*

3

Within a few hours of Marconi's e-mailed response, Tigani contacted Marconi via telephone and advised that his offer to settle was contingent on the Fishers sharing information not previously disclosed about a scheme or payments related to NKS. Marconi disagreed, and insisted that the offer—which had already been accepted—required only that his clients offer videotaped testimony under oath as to their knowledge of any facts, communications, or evidence relating to NKS, regardless of the extent or scope of that knowledge. Ultimately, Tigani refused to execute a formal settlement agreement, prompting the Fishers to file the instant Motion to Enforce Settlement Agreement on December 15, 2020.

Meanwhile, the parties were also engaged in discovery. On November 2, 2020, Tigani obtained several subpoenas directed to telephone service providers, for telephone records and text messages sent and/or received by Michael Phouts and Nina Fisher, as well as non-parties NKS and Ruggiero, during specific periods. However, the telephone service providers required the consent of the subscribers for such records to be disclosed. Not surprisingly, Michael Phouts, Nina Fisher, NKS, and Ruggiero all refused to consent. In response, Tigani filed a Motion to Compel on December 15, 2020, directed to the Fishers. NKS and Ruggiero follow suit with a Motion to Quash and for a Protective Order on December 23, 2020.

## PARTIES' CONTENTIONS

With regards to the Motion to Enforce Settlement Agreement, it is the Fishers position that the December 4th E-mail constituted an offer, including all essential terms, that they accepted the offer, including all terms, in the December 7th E-mail, thereby creating a valid and enforceable agreement. Tigani, on the other hand, argues that the parties did not intend

4

to be bound as there was no agreement to all material terms, no consideration, and no formal, signed agreement. As such, he contends, no agreement exists to be enforced.

As to the Motion to Compel, Tigani argues that 11 *Del. C.* § 2324(c)(2) requires the Fishers to provide consent to the release of records of their telephone communications. Further, Tigani alleges that the Fishers refused to confer on a discovery plan. The Fishers counter that the information sought is not relevant to the case before this Court; that Tigani misstates the applicable Court rules regarding discovery, and; that 11 *Del. C.* §2423(c)(2) does not obligate their consent to release of telephone records.

## DISCUSSION

### A. An Enforceable Agreement Exists Between the Parties

Delaware favors voluntary settlement of legal disputes,[3] and it is well established that the court "has jurisdiction to enforce a settlement agreement entered into by the parties in a case currently pending before it."[4] The burden is on the party seeking to enforce settlement to prove, by a preponderance of the evidence, the existence of a settlement agreement between the parties.[5]

Under Delaware law, a settlement agreement is an enforceable contract where the parties "agree to all material terms and intend to be bound by that contract, 'whether or not [the contract is] made in the presence of the court, and even in the absence of a writing.'"[6]

---

[3] *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2020 WL 1972857 (Del. Super. April 23, 2020); *Stone Creek Custom Kitchens & Design v. Vincent*, 2016 WL 7048784 (Del. Super. Dec. 2, 2016); *Spacht v. Cahall*, 2016 WL 6298836 (Del. Super. Oct. 27, 2016).

[4] *Rohm and Haas Electronic Materials, LLC v. Honeywell Intern., Inc.*, 2009 WL 1033651, at *5 ((D. Del. Apr. 16, 2009)) (quoting *Liberate Technologies LLC v. Worldgate Comm'ns, Inc.*, 133 F.Supp.2d 357, 358 (D.Del.2001)).

[5] *Delphi; Stone Creek; Schwartz v. Chase,*

[6] *Schwartz v. Chase and Conquest Flight, LLC*, 2010 Wl 2601608, at *4 (Del. Ch. June 29, 2010)(quoting *Rohm and Haas Electronic Materials, LLC v. Honeywell Intern., Inc.*, 2009 WL 1033651, at *4 ((D. Del. Apr. 16, 2009)).

5

The analysis hinges on "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential."[7]

Importantly, the question of the parties' intent to be bound does not call for analysis of the parties' subjective intentions. Delaware follows the objective theory of contracts, pursuant to which "determining whether the parties reached a binding contract to settle requires an examination of the 'objective, overt manifestations of the parties, rather than their subjective intent.'"[8] The objective theory "does not invite a tour through [a party's] cranium, with [the party] as the guide."[9] Rather, "unambiguous written agreements should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties."[10]

Tigani emphasizes that the parties did not intend to be bound as there was no formal executed agreement which, he maintains, demonstrates that his offer was only an *offer*—not an actual agreement. This argument is inapposite. It is a well-established precept of contract law that a contract is formed when one party has made an offer and the other party has accepted, regardless of whether the agreement is memorialized in a formal, executed writing:[11]

> Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding

---

[7]  *Leeds v. First Allied Connecticut Corp.*,

[8]  *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010)(quoting *Del. Dept. of Educ. v. Doe*, 2008 WL 5101623, at *1 (Del.Ch. Nov.21, 2008).

[9]  *Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002)(quoting E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 3.6 (2d ed.2000)).

[10] *I.U. North America, Inc. v. A.I.U Ins. Co.*, 896 A.2d

[11] *Cite cases that saw offer + acceptance = contract; Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 17, 1992)("The power to settle and compromise a claim does not turn on whether the parties have reduced the terms of the settlement to a formal stipulation"); *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2020 WL 1972857 (Del. Super. April 23, 2020).

6

that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a positive agreement that it should not be binding until so reduced to writing and formally executed.[12]

Here, there is no evidence that the parties intended to be bound only by a forthcoming formal settlement document, nor is there evidence that the parties intended for such document to reflect any terms other than those already agreed upon.

Tigani also argues that the parties did not intend to be bound because the Fishers did not possess any additional information about NKS. Much of Tigani's argument focuses on his expectation that the Fishers had information relevant to his Chancery Court litigation and, since they did not, there was no consideration and no agreement on all material terms. Indeed, bargained for consideration is a necessary element of contract formation,[13] but Tigani's argument misconstrues that principal's meaning. As described in the *Restatement (Second) of Contracts*, § 71 (1981):

> In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: the consideration induces the making of the promise and the promise induces the furnishing of the consideration. Here, as in the matter of mutual assent, the law is concerned with the external manifestation rather than the undisclosed mental state: it is enough that one party manifests an intention to induce the other's response and to be induced by it and that the other responds in accordance with the inducement.

Importantly, Tigani's subjective intent has no bearing on the Court's analysis of the consideration at the core of this agreement.[14] Pursuant to the unambiguous terms of the offer drafted by Tigani himself, the consideration furnished by the Fishers was a videotaped sworn

---

[12] *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1287 (Del. Ch.2004).
[13] *Barnard.* 642 A.2d 808
[14] Objective theory citations with parentheticals

7

statement, regardless of that statement's impact on other litigation. Specifically, the Fishers were required to execute a videotaped statement under oath testifying to "all facts, communications, and evidence of any scheme or payments from NKS or anyone related to the NKS matter." The offer was not contingent on the Fishers possessing any particular information, and did not preclude the possibility that the Fishers testimony might not support Tigani's position in the Chancery Court cases.

Based on the plain language of the parties' agreement, I find that there was bargained for consideration, and that the parties intended to be bound by the terms set forth in the December 4th E-mail, and unequivocally accepted in the December 7th E-mail. Further, I find that the parties' agreement constituted an agreement on all essential terms. For those reasons, the Fisher's Motion to Enforce Settlement Agreement is hereby **GRANTED**.

## B. Tigani's Motion To Compel Is Without Merit

Since the Court finds that an enforceable settlement agreement existed between the parties, the Motion to Compel filed by Tigani, is consequently moot.[15] However, given the arduous and drawn-out legal battles between the parties, the Court will briefly address the arguments raised by the parties.

Tigani's Motion to Compel is without merit. The law upon which Tigani relies in support of his proposition that the Fishers are statutorily required to consent to the release of their telephone record, 11 *Del. C.* § 2423(c)(2), is Delaware's wiretapping statute; it is wholly

---

[15] Likewise, the Motion to Quash and for a Protective Order filed by NKS and Ruggiero, which was granted by this Court at the hearing on February 8, 2021, is moot considering the Court's finding and Order on the Motion to Enforce Settlement Agreement.

inapplicable in this context. Further, Tigani failed to demonstrate that his broad investigation into the Fishers' private telephone records would lead to the discovery of relevant information.

Also, citing to *CCP Civil Rules* 26(f)(5) and 37(f), Tigani seeks to compel the Fishers to participate in the framing of a discovery plan. This argument is likewise unfounded. Although he is correct in that the parties have a duty to participate in good faith in framing of a discovery plan, these provisions simply allow Tigani to seek a discovery conference with the Court so that both parties may fashion a discover plan. Discovery deadlines in this matter were already addressed by the parties and the Court at the pre-trial conference on February 3, 2020, as well as the second pre-trial conference held on September 16, 2020.

## CONCLUSION

For the foregoing reasons, the Fishers' Motion to Enforce Settlement Agreement is **GRANTED**, and Tigani's Motion to Compel is **DENIED as moot**.

**IT IS SO ORDERED.**

Alex J. Smalls,
Chief Judge

9